## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY MULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case 2-20-cv-1883-NR |
| v. | ) | |
| | ) | |
| THE CONSOL ENERGY, INC. LONG | ) | |
| TERM DISABILITY PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

David J. Laurent (PA 33150)
William P. Lewis (PA 316527)
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413
Telephone:  412-562-8800
Fax:  412-562-1041
david.laurent@bipc.com
william.lewis@bipc.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 2

       A.     Lincoln Did Not Abuse its Discretion in Finding That Plaintiff is Capable of Suitable Employment. ....................................................................................... 2

       B.     The Error in Describing Plaintiff's Prior Job in the 2019 Vocational Review Falls Short of Establishing that Lincoln's Determination That Plaintiff is Vocationally Qualified to Perform Sedentary Work was Arbitrary and Capricious. ................... 4

       C.     Lincoln Did Not Abuse Its Discretion By Relying on the Opinions of Its Peer Review Doctors. ................................................................................................. 6

       D.     Plaintiff Fails to Establish that Lincoln's Claim Determination Was Arbitrary and Capricious Due to Alleged Procedural Missteps. ................................................. 11

            1.     Lincoln Provided Reasonable Opportunity to Plaintiff's Treating Physicians to Address His Functional Capacity. ....................................... 11

            2.     Lincoln Did Not Improperly Withhold From Plaintiff Information Regarding the Basis For its Decision to Terminate Benefits. ................... 13

            3.     The Photographs Pulled From Facebook Support Lincoln's Determination That Plaintiff Was no Longer Totally Disabled. ...................................... 14

       E.     ERISA Precludes Plaintiff From Raising His Claim for Reimbursement of SSDI Offsets For the First Time On Appeal. ................................................................ 15

III.   CONCLUSION .................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abram v. Carill, Inc.*,
  395 F.3d 882 (8th Cir. 2005) ..................................................................................14

*Addington v. Senior Vice President of Human Res., Consol Energy, Inc.*,
  2019 U.S. Dist. LEXIS 43830 (W.D. Pa. Maar. 15, 2019), *aff'd*, 841 F. App'x
  443 (3d Cir. 2020)..................................................................................................10

*Addington v. Senior Vice President of Human Resources Consol Energy
  Incorporated*,
  841 Fed. Appx. 443 (3d Cir. 2020)......................................................................1, 10

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003)..................................................................................................8

*Forchic v. Lippincott, Jacobs & Gruder*,
  1999 U.S. Dist. LEXIS 21419 (D.N.J. Nov. 29, 1999), *aff'd*, 262 F.3d 403 (3d
  Cir. 2001) .................................................................................................................7

*Hoch v. Hartford Life & Accident Ins. Co.*,
  2009 U.S. Dist. LEXIS 37037, 2009 WL 1162823, at *14 (E.D. Pa. Apr. 29,
  2009) ........................................................................................................................7

*Hughs v. Hartford Life & Accident Ins. Co.*,
  368 F. Supp. 386 (D. Conn. 2019)..........................................................................14

*Killebrew v. Prudential Ins. Co. of Am.*,
  No. 3:15-CV-01415, 2017 U.S. Dist. LEXIS 64283, 2017 WL 1519500 (M.D.
  Pa. 2017) ..................................................................................................................9

*Killian v. Hartford Life & Accident Ins. Co.*,
  No. CV 16-1377, 2017 U.S. Dist. LEXIS 12874, 2017 WL 429905 (E.D. Pa.
  2017) ........................................................................................................................9

*Lamanna v. Special Agents Mut. Benefits Ass'n*,
  546 F. Supp. 2d 261 (W.D. Pa. 2008)......................................................................9

*Lasser v. Reliance Standard Life Ins. Co.*,
  344 F.3d 38 (3d Cir. 2003).......................................................................................8

*McCann v. Unum Provident*,
  2013 U.S. Dist. LEXIS 36781 (D.N.J. Mar. 18, 2013)............................................7

*Nicholas v. Verizon Commc'ns, Inc.*,
    78 F. App'x 209 (3d Cir. 2003) ..................................................................................7, 8

*Pearson-Rhoads v. Aetna Life Ins. Co.*,
    2011 WL 5116633 (E.D. Pa. Oct. 28, 2011)..............................................................9

*Potts v. Hartford Life & Accident Ins. Co.*,
    272 F. Supp. 3d 690 (W.D. Pa. 2017)..................................................................9, 10

*Salomaa v. Honda Long Term Disability Plan*,
    642 F.3d 666 (9th Cir. 2011) ...................................................................................14

*Schlegle v. Life Ins. Co. of N. Am.*,
    269 F.Supp.2d 612 (E.D. Pa. 2003) ...........................................................................9

*Estate of Schwing v. Lilly Health Plan*,
    562 F.3d 522 (3d Cir. 2009)........................................................................................8

*Sollon v. Ohio Cas. Ins. Co.*,
    396 F. Supp. 2d 560 (W.D. Pa. 2005).........................................................................9

*Sutley v. Int'l Paper Co.*,
    2009 U.S. Dist. LEXIS 133217 (W.D. Pa. Feb. 27, 2009) ....................................2, 3

*Wolf v. Nat'l Shopmen Pension Fund*,
    728 F.2d 182 (3d Cir. 1984)......................................................................................15

## Rules and Regulations

29 C.F.R. § 2560.503-1(h)(2) ...............................................................................13

## I.   __INTRODUCTION__

Plaintiff concedes that ERISA's arbitrary and capricious standard of review applies in this case because the applicable Consol Energy, Inc. Long Term Disability Plan ("LTD Plan") expressly provides the Plan Administrator, Consol Energy, Inc., and its designated Claims Administrator, Lincoln Life Assurance Company of Boston ("Lincoln"), discretionary authority to determine eligibility for benefits and to construe the terms of the LTD Plan.  (ECF No. 13). However, in his briefing, Plaintiff brushes past this point, and improperly contends for a level of scrutiny that amounts to *de novo* review of Lincoln's claim determinations.

Plaintiff's contention that Lincoln reached the wrong conclusions is not grounds for reversal.  The question presented to this Court is not whether Lincoln's claim determination was correct, or whether Lincoln could have performed a more thorough evaluation of Plaintiff's occupational qualification and functional limitations before proceeding with terminating his benefits.  Rather, the Court reviews the claims determination for abuse of discretion.

As the Third Circuit recently explained in *Addington v. Senior Vice President of Human Resources Consol Energy Incorporated,* 841 Fed. Appx. 443 (3d Cir. 2020) (non-precedential)*,* "[t]o the extent that [the Claimant] challenges specific conclusions drawn by physicians and analysts employed by or contracted with by Liberty, we decline to 'substitute [our] own judgement for that of the defendants in determining eligibility for benefits.'" *Id.*

In short, Plaintiff fails to demonstrate that Lincoln's claim determination was arbitrary or capricious, and for this reason, the Court should uphold Lincoln's determination to terminate Plaintiff's benefits because he no longer met the definition of Total Disability under the LTD Plan.

## II.    ARGUMENT

### A.    Lincoln Did Not Abuse its Discretion in Finding That Plaintiff is Capable of Suitable Employment.

Plaintiff argues that the termination of his benefits should be reversed because, according to Plaintiff, he is not qualified to perform the **specific** positions identified in the 2016 and 2019 Vocational Reviews completed by Lincoln's vocational case managers.  (*See* AR862-865; AR858-861)n  Plaintiff, however, misconstrues the conditions for terminating benefits under the Plan.

The Plan expressly provides that a beneficiary, such as Plaintiff, is only entitled to continued benefits provided the beneficiary remains "***completely unable to engage in any Suitable Employment***," with "Suitable Employment" defined as "a full-time position for which you were trained in vocational training, or for which you are qualified by experience or education."  (AR18) (emphasis added).

The Plan does ***not*** require Lincoln to positively identify positions that Plaintiff can secure before terminating benefits.  Rather, ***the "Suitable Employment" analysis is met if Plaintiff has the physical capability to engage in at least sedentary work, and can perform the job based on his education and vocational experience***.

In a recent case, the claimant made a similar argument as Plaintiff, contending that the Plan Administrator acted arbitrarily and capriciously when it terminated his benefits without first performing a vocational review and identifying jobs he was capable of performing within his functional restrictions.  *See Sutley v. Int'l Paper Co.*, 2009 U.S. Dist. LEXIS 133217, at *32-33 (W.D. Pa. Feb. 27, 2009).  The District Court, however, rejected the claimant's argument based on the Plan's definition of disability, which, similar to the plan language at issue here, required a showing that the plan participant was "incapable of performing any occupation or employment

2

for which the participant is qualified." *Id*.  Based on this language the District Court concluded that "[t]he Plan Administrator is not under any obligation to demonstrate what jobs the Plaintiff is capable of performing." *Id*.[1]

Similar to the plan language at issue in *Sutley*, the Plan administered by Lincoln also does not require Lincoln to identify the specific jobs that Plaintiff is qualified to perform before terminating benefits.  As noted above, Plaintiff is only entitled to continued benefits provided he remains "**completely unable to engage in *any* Suitable Employment**."  (AR18) (emphasis added).  Based on this language, Lincoln was entitled to terminate benefits once it determined that Plaintiff was both physically capable and occupationally qualified to perform ***any*** sedentary work.

Accordingly, whether or not Plaintiff is capable of securing the **specific** positions identified in the two vocational reviews conducted by Lincoln is beside the point.  Instead, the key point is that these vocational reviews concluded that Plaintiff possessed various supervisory, communication, and clerical/computer skills that otherwise qualified him to perform sedentary occupations.  While the vocational reviews each identified three sedentary occupations that fit within Plaintiff's occupational training and experience, the reviewers by no means suggested that these were the only sedentary occupations that Plaintiff could prospectively perform.

And contrary to Plaintiff's contention, the vocational assessments did not invent capabilities he did not possess.  The review process included a telephone interview with Plaintiff, where Plaintiff confirmed that he supervised ten to fifteen people, conducted training and

---

[1] The District Court further observed that "the ERISA regulations do not require the use of vocational experts as Plaintiff would have one to believe." *Sutley*, 2009 U.S. Dist. LEXIS 133217, at *32-33.

inspections, and had obtained certifications as a First Class Mine Foreman.  (AR863).[2]

Therefore, Lincoln did not abuse its discretion in concluding, based on these vocational

assessments, that Plaintiff possessed management, communication and clerical/computer skills

that otherwise qualified him to perform sedentary work.

Finally, the fact that Plaintiff disagrees with Lincoln's assessment of his vocational

abilities or the positions he is qualified to perform is insufficient grounds for reversal.  The Plan

by its own terms provides that Lincoln "has sole discretion to determine what is Suitable

Employment."  (AR18).  Lincoln exercised that discretion by conducting vocational reviews in

2016 and again in 2019, and by concluding, based on those reviews, that Plaintiff could perform

Suitable Employment.

> **B.      The Error in Describing Plaintiff's Prior Job in the 2019 Vocational Review Falls Short of Establishing that Lincoln's Determination That Plaintiff is Vocationally Qualified to Perform Sedentary Work was Arbitrary and Capricious.**

Plaintiff further takes issue with the fact that Lincoln misidentified his vocation in the

2019 Vocational Review (AR858-861), and goes as far to contend that Lincoln's claims decision

should be reversed on this basis alone.  The mistake, however, was not material to Lincoln's

ultimate determination that Plaintiff could perform Suitable Employment given the actual job

duties and experience set forth by the vocational experts.

**First**, the 2019 Vocational Review specifically referenced and otherwise relied on the

earlier vocational report completed in November 2016, which correctly identified Plaintiff's job

---

[2] The 2019 Vocational Review summarized Plaintiff's Skills & Abilities as follows: "Planning and directing work of others; knowing technical details of specialty area; working with different kinds of people in a variety of situations; making decision that may affect work activities, costs, or safety of others; using charts, maps, blueprints, or plans; and using numbers to plan budgets. Obtaining and seeing to the appropriate use of equipment, facilities, and materials to do certain work; assessing performance individuals; communicating with others in a professional and tactful manner; and basic computer skills."  (AR858).

duties as "Section Supervisor."  (AR862-865).  While the 2019 and 2016 Vocational Reviews provided different examples of positions that Plaintiff was qualified to performs, critically, both reports concluded that Plaintiff possessed certain supervisory, communication, and clerical/communication skills that qualified him for sedentary work fitting within his functional limitations.  (AR858-861; AR862-865).  And on this basis, Lincoln correctly concluded that Plaintiff was no longer Totally Disabled.

**Second**, contrary to Plaintiff's contention, the 2016 Vocational Review is not irrelevant to the inquiry at hand – namely, whether Plaintiff is occupationally qualified to perform sedentary work.  The 2016 Vocational Review (which correctly identified Plaintiff's job duties as "Section Supervisor"), found that Plaintiff (based on his work, education, training and life experience) was qualified to perform the following three sedentary occupations: Transportation-Maintenance Supervisor, Dispatcher (non-emergency), and Production Control Supervisor.  (AR864).  ***If this was true in 2016, it would remain so in 2019***.

The fact that Lincoln chose to reinstate Plaintiff's benefits after the 2016 Vocational Review (due in part to a scheduled ankle surgery and then later due to a mental impairment), does not render the findings and conclusions in the 2016 Vocational Review irrelevant.  To the contrary, once the ankle stabilized and the mental impairment could no longer be considered given the one-year limitation, there was no reason Plaintiff did not have the job experience sufficient to perform the sedentary positions identified in the 2016 vocational assessment.

Accordingly, notwithstanding the later mistake regarding Plaintiff's job title, in light of Plaintiff's previously established vocational experience and Plaintiff's sedentary physical restrictions, Lincoln did not abuse its discretion when it concluded that Plaintiff could perform Suitable Employment.

**C.**    **Lincoln Did Not Abuse Its Discretion By Relying on the Opinions of Its Peer Review Doctors.**

In his first brief, Plaintiff conceded that "there is no requirement that administrators avail themselves of their right to obtain an independent medical examination." (ECF 21, p.29). Plaintiff further acknowledged that "Lincoln was not required to defer to the opinions of Mr. Mullins' treating physicians over the opinions of its own hired physicians." (ECF 21, p.34).

Notwithstanding, and somewhat inexplicably, Plaintiff argues that Lincoln abused its discretion when it terminated his benefits based on various peer review reports and vocational assessments, without first conducting an in-person examination to assess his functional capacity. (ECF 30, p.18). Plaintiff further contends that Lincoln was obligated to cite "substantial evidence" showing that Lincoln's peer review doctors were "correct" in their assessment of his functional capacity to perform sedentary work, especially where Plaintiff's treating physician, Dr. McGarry, recommended that Plaintiff "avoid lifting 5 pounds." (*See* AR516-518; AR501-502). Plaintiff's arguments are misguided for a number of reasons.

**First**, there is no actual conflict in the medical opinions because Dr. McGarry did not opine that a five pound restriction remained in place after Plaintiff recovered from his ankle surgery. As previously detailed in Defendant's initial brief at pages 22 - 25, the five pound lifting restriction was not a current or ongoing prognosis, but is instead a carryover from Plaintiff's post-operational care plan after undergoing ankle surgery in February 2017. (ECF 29). Notably, the five pound lifting restriction was not included in Dr. McGarry's last office note of April 9, 2020, and is otherwise inconsistent with Dr. McGarry's more recent objective findings regarding Plaintiff's range of motion, stability, muscle tone, and post-operative rehabilitation. (AR517-518).

6

Plaintiff did not respond to these arguments in his reply brief, but instead simply assumes, reflexively, that the five pound lifting restriction is ongoing (even though Dr. McGarry dropped it from his last office note).  Plaintiff also did not address the functional assessments from his own orthopedic surgeon – Dr. Aaron Scott – affirming that Plaintiff (post-surgery) could lift up to 10 pounds (and 25 pounds occasionally) (AR2795-2798; AR3072-3074).

These facts undermine Plaintiff's contention that he remains subject to a five pound lifting restriction, and support the conclusions reached by Lincoln's peer review consultants that Plaintiff is capable of sedentary work.

**Second**, the law is clear – Lincoln is entitled to rely on the opinions of its medical consultants, even when those opinions were based on a "paper review" and purportedly disagree with one of Plaintiff's treating physicians:

> ***Both the Third Circuit Court of Appeals and district courts therein have concluded that a plan administrator that enjoys discretionary authority to determine eligibility for benefits may (1) rely on the opinions of non-treating physicians and, (2) accord those opinions greater weight than the opinions of treating physicians***.  *See Nichols*, 78 Fed.Appx. at 211-12 ("[A]dministrators of ERISA plans are not obligated to accord special deference to the opinion of a claimant's treating physician. [An administrator] is therefore justified in placing reliance on the opinions of its own consulting doctors and need not provide a special explanation of its decision to do so."); *Hoch*, 2009 U.S. Dist. LEXIS 37037, 2009 WL 1162823, at *14; *Forchic v. Lippincott, Jacobs & Gruder*, No. 98-5423, 1999 U.S. Dist. LEXIS 21419, at *44 (D.N.J. Nov. 29, 1999) ("[I]t is not improper to rely on the opinions of nonexamining physicians who had before them the entire record of medical evidence, more evidence than was available to any one doctor who saw plaintiff previously. . . . That these doctors worked for defendant might cause this Court to give their opinions less weight, but defendant was entitled to rely upon them."), *aff'd*, 262 F.3d 403 (3d Cir. 2001).

*McCann v. Unum Provident*, 2013 U.S. Dist. LEXIS 36781, at *45-46 (D.N.J. Mar. 18, 2013) (emphasis added).

**Third**, Lincoln was not obligated to explain why it credited "reliable evidence [*i.e.* the opinions of its peer review doctors] that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). *See also Nicholas v. Verizon Commc'ns, Inc.*, 78 F. App'x 209, 212 (3d Cir. 2003) (discussing *Black & Decker* and stating that a plan administrator is "justified in placing reliance on the opinions of its own consulting doctors and need not provide a special explanation of its decision to do so.").

Indeed, Plaintiff mistakenly continues to rely on *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 38 (3d Cir. 2003). *Lasser* did not impose on plan administrators a special burden to explain the scientific basis for relying on the opinions of peer review consultants. Rather, *Lasser* held that a plan administrator must base its claims determination on substantial evidence, and concluded that the benefit denial at issue in the case was unsupported by substantial evidence where three treating physicians **and two of the plan's own consulting physicians** agreed that the claimant remained disabled. *Lasser*, 344 F.3d at 391. [3]

By this standard, Lincoln satisfied its burden by producing multiple peer review reports all of which agreed that Plaintiff, though functionally limited, was capable of performing sedentary work. Lincoln was not otherwise obligated to produce <u>additional</u> evidence or explanation supporting its reasons for relying on the opinions of its peer review consultants.

**Fourth**, Lincoln reasonably and appropriately relied on the opinions of its peer review doctors, as they were based on the complete medical record. Lincoln's peer review doctors evaluated information regarding Plaintiff's functional capacity, including Dr. McGarry's purported five pound lifting restrictions, as well as functional assessments from Plaintiff's

---

[3] *Lasser* is also inapplicable insofar that it applied the "heightened standard of arbitrary and capricious review," which the Third Circuit later rejected. *See Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009).

orthopedic surgeon – Dr. Aaron Scott – affirming that Plaintiff (post-surgery) could lift up to 10 pounds (and 25 pounds occasionally) (AR2795-2798; AR3072-3074)).

Thus it was not an abuse of discretion for Lincoln to credit its peer review doctors over Dr. McGarry in determining that Plaintiff had a ten pound lifting capacity and was capable of performing sedentary work. *See Schlegle v. Life Ins. Co. of N. Am.*, 269 F.Supp.2d 612, 627-28 (E.D. Pa. 2003) (administrator reasonably relied solely on a review of records by its own non-treating physicians); *Pearson-Rhoads v. Aetna Life Ins. Co.*, 2011 WL 5116633, at \*12 (E.D. Pa. Oct. 28, 2011) ("Aetna's reliance on the opinions of highly qualified medical specialists demonstrates that its decision was reasonable").

**Fifth**, Lincoln was not obligated to obtain an independent medical examination before proceeding with terminating benefits, notwithstanding the purported inconsistency between the opinions of Lincoln's peer review doctors (who concluded Plaintiff had a ten pound lifting capacity) and Plaintiff's treating physician (who in a handful of outdated office notes recommended that Plaintiff avoid lifting five pounds).

This Court recently held in that regard as follows:

> ***This Court finds no authority to support Plaintiff's contention that Defendant was obligated to have Plaintiff undergo a medical examination as part of Defendant's review process***. To the contrary, "numerous courts in [the Third C]ircuit have held that there is no legal requirement for a plan administrator to demand an independent medical examination as part of its review of a claim for disability benefits under an ERISA-governed plan, even if the plan permits it to do so." *Killian v. Hartford Life & Accident Ins. Co.*, No. CV 16-1377, 2017 U.S. Dist. LEXIS 12874, 2017 WL 429905, at \*14 (E.D. Pa. 2017), *citing Sollon v. Ohio Cas. Ins. Co.*, 396 F. Supp. 2d 560, 586 (W.D. Pa. 2005). "Indeed, ERISA does not require plan administrators to perform any physical examinations." *Killebrew v. Prudential Ins. Co. of Am.*, No. 3:15-CV-01415, 2017 U.S. Dist. LEXIS 64283, 2017 WL 1519500, at \*18 (M.D. Pa. 2017), citing *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F. Supp. 2d 261, 296 (W.D. Pa. 2008).

*Potts v. Hartford Life & Accident Ins. Co.*, 272 F. Supp. 3d 690, 710 (W.D. Pa. 2017) (emphasis added).

In *Potts*, this Court determined that where the medical records contained information regarding claimant's capabilities, it was not arbitrary and capricious to forego a physical examination in assessing the claimant's functional capacity. *Id*.

Similarly, in *Addington v. Senior Vice President of Human Res., Consol Energy, Inc.*, 2019 U.S. Dist. LEXIS 43830, at *20 (W.D. Pa. Mar. 15, 2019), *aff'd*, 841 F. App'x 443 (3d Cir. 2020), the Court rejected the claimant's argument that it was arbitrary and capricious for the Plan Administrator to rely on the opinion of a physician who did not examine the claimant over that of a treating physician who consistently maintained that the claimant was totally disabled.[4]

Here, like the claims administrators in *Potts* and *Addington*, Lincoln's decision to forego a physical examination and rely on the opinions of its peer review doctors was not arbitrary and capricious.

Indeed, the extensive medical record Lincoln's peer review doctors reviewed contained information regarding Plaintiff's functional capacity, including treatment notes addressing his lifting capabilities, range of motion, pain tolerance, and post-operative rehabilitation. (AR498-499; AR508; AR511; AR514; AR517-518; ARAR2795-2798; AR3072-3074). Based on their

---

[4] Plaintiff attempts to distinguish *Addington* on the basis that the claimant's surgeon cleared claimant to return to work. (ECF 30, p.21). Plaintiff, however, does not address the fact that in *Addington*, the claimant argued for reinstatement of benefits based on the opinion of his treating physician who **consistently** opined that the claimant was totally disabled. *See Addington*, 841 Fed. Appx. at 448. *Addington* also involved the very same LTD Plan terms as those under review in the instant litigation. Consequently, the Third Circuit's conclusion that the Plan Administrator did not abuse its discretion when it credited the opinions of its peer review consultants over those of the claimant's treating physician is particularly apt. This is especially the case given that, unlike *Addington*, <u>none</u> of Plaintiff's treating physicians held that Plaintiff was incapable of sedentary work.

10

review of the complete medical record, Lincoln's peer review doctors, who themselves were Board Certified in Physical Medicine & Rehabilitation/Pain Medicine, were able to conclude that Plaintiff was capable of sustaining a full-time work capacity with certain restrictions and limitations, including a ten pound lifting restriction.

Accordingly, Lincoln did not abuse its discretion when it terminated Plaintiff's benefits based on the peer review reports of its consulting physicians, who concluded that Plaintiff was capable of sedentary work.

### D. Plaintiff Fails to Establish that Lincoln's Claim Determination Was Arbitrary and Capricious Due to Alleged Procedural Missteps.

Plaintiff contends that Lincoln's decision to terminate benefits was arbitrary and capricious due to certain alleged procedural missteps during the administrative review of his benefits eligibility.  Plaintiff argues variously (1) that Lincoln should have solicited opinions from his treating physicians regarding his functional capacity before terminating benefits; (2) that Lincoln improperly withheld information relevant to the claims denial; and (3) that Lincoln improperly relied on certain social media information as support for its decision to terminate Plaintiff's benefits.  None of these additional arguments support reversal of Lincoln's denial of benefits.

### 1. Lincoln Provided Reasonable Opportunity to Plaintiff's Treating Physicians to Address His Functional Capacity.

Contrary to Plaintiff's contention, Lincoln did solicit from Plaintiff and from his treating physicians all relevant medical documentation for inclusion in the claims file.  As Plaintiff acknowledged, over the course of the four year period that he received benefits, Lincoln repeatedly requested updated medical documentation, inclusive of office treatment notes, test results, operative reports, prescription histories, and treatment plans.  (*See e.g.* AR143, AR146, AR149, AR940, AR952, AR955, AR965, AR970, AR980, AR983, AR1237, AR1247).  Lincoln

11

further sent to Plaintiff's treating physicians "Restrictions Forms" to assist in its evaluation of Plaintiff's functional capacity and ability to return to work. (*See e.g.* AR114-116; AR173-175; AR952-953; AR995-997; AR1001-1003; AR1007-1009; AR1013-1015; AR1117-1119).

When Lincoln terminated Plaintiff's benefits in December 2019, Lincoln set forth in detail the reasons for terminating Plaintiff's benefits and specifically requested the following information should Plaintiff chose to appeal Lincoln's decision:

> Office notes, diagnostic test results, x-ray reports, MRI reports, EMG, ECF/EKG, CT reports, operative reports, hospital admission and discharge summaries, emergency department notes, procedure reports, CT scan reports consulting physician reports, pharmacy records, pain management notes, physical and occupational therapy notes, pulmonology notes, **Independent Medical Examinations, Functional Capacity Evaluations**, Independent Psychiatric Evaluations, psychotherapy notes, standardized measures of anxiety and/or depression from June 12, 2015 to the present (not already on file) . . . **and any additional information which Mr. Mullins feels will support his claim continuously beyond March 13, 2020** and to the date of his final appeal. (emphasis added) (AR577).

And when Plaintiff's counsel appealed Lincoln's decision to terminate benefits effective March 13, 2020, Plaintiff's counsel proceeded to provide over one-hundred of additional pages of medical documentation, to add to the hundreds of pages already in Plaintiff's claims file. (AR497; AR3529).

*__Nonetheless, knowing that Lincoln's peer review doctor had already opined that Plaintiff could perform sedentary work, Plaintiff did not provide a contrary opinion from any of his treating doctors (or any other doctors).__*  Indeed, nothing stopped Plaintiff from submitting such evidence, assuming he could obtain it.  Therefore, the absence of such evidence in these circumstances is telling.

Furthermore, both of Lincoln's peer review doctors (Dr. Patel and Dr. Kohan), reached out to Plaintiff's treating physicians (including Dr. McGarry) to confirm whether they agreed

with their conclusions that Plaintiff was capable of sedentary work, but never received a reply. (AR820-823; AR848).  Dr. Patel called twice, left messages and sent letters.  (AR820-823; AR575).  Dr. Kohan called twice and left messages.  (AR851).

Plaintiff complains that the letters sent by Dr. Patel to his treating providers were dated the same day that Dr. Patel submitted his report to Lincoln.  However, the letters requested a response within five (5) days and Lincoln waited fourteen (14) days to issue its benefits denial letter on December 30, 2019.  (AR572-578).  As such, Plaintiff's treating physicians, including Dr. McGarry, were given multiple opportunities to address the conclusions reached by Plaintiff's peer review consultants that he was capable of sedentary work – but they never responded.

In short, Plaintiff had ample opportunity to submit a medical opinion expressly stating that he could not perform sedentary work, but did not do it, likely because he has no such evidence.

### 2. Lincoln Did Not Improperly Withhold From Plaintiff Information Regarding the Basis For its Decision to Terminate Benefits.

Plaintiff argues that Lincoln should have provided him with copies of the peer review reports completed by Dr. Patel and Dr. Kohan before terminating his benefits.  Plaintiff, however, fails to cite any legal authority that requires automatic disclosure of peer review reports as a pre-condition to making a claims determination.

The regulation Plaintiff cited – 29 C.F.R. § 2560.503-1(h)(2) – provides that "*a claimant shall be provided, **upon request** and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits*." (emphasis added).  Plaintiff, however, does not point to anywhere in the record where he requested, or was denied, an opportunity to review the peer review reports completed by Dr. Patel or Dr. Kohan.

13

Moreover, the case law Plaintiff cited is inapposite, as each of the claimants in ***these cases requested but were denied access to the claims file***.  *See Hughs v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 386, 388 (D. Conn. 2019); *Abram v. Carill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005); *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 671 (9th Cir. 2011).  Here, Plaintiff never made such a request.

### 3.    The Photographs Pulled From Facebook Support Lincoln's Determination That Plaintiff Was no Longer Totally Disabled.

In its June 17, 2020 letter denying Plaintiff's appeal for reinstatement of benefits, Lincoln included the following notation:

> During the review of Mr. Mullins' claim, we obtained social media
> information that shows that he has been engaging in social activities.
> This information indicates a level of activity and functionality which
> is inconsistent with what is reported to his treating provider.
> (AR638).

The social media information that Lincoln references in its letter consisted of photographs from Facebook showing Plaintiff at Niagara Falls, attending sporting events, and in various outdoor settings.  (AR622-627).  One of the photographs contained a caption that read: "Went to the Breaks park today to do some fishing."  (AR627).[5]

Plaintiff argues that the social media information is not "substantial evidence," sufficient to warrant termination of his benefits.  Lincoln, however, never took the position that its decision to terminate Plaintiff's benefits was based exclusively or even primarily on these Facebook photographs.  In its December 30, 2019 letter apprising Plaintiff of its decision to terminate his benefits, Lincoln does not mention the Facebook photographs.  And in the June 17, 2020 letter

---

[5] Plaintiff argues that there is no way to determine the identity of the individuals in the photographs, as they are not labeled.  However, it is fairly evident that these postings include images of Plaintiff, given that the Facebook account bears the name of Plaintiff's wife, Cindy Mullins.  (AR622-627).

14

denying Plaintiff's appeal for reinstatement of benefits, Lincoln included the above notation addressing the social media information at the end of a twelve page letter outlining the other substantial evidence Lincoln relied upon as grounds for terminating Plaintiff's benefits (inclusive of Plaintiff's complete claims file, peer review reports, and vocational assessments).

Accordingly, Lincoln did not abuse its discretion in identifying these photographs as additional evidence corroborating the conclusions reached by Lincoln's peer review doctors that Plaintiff was not Totally Disabled.

### E.    ERISA Precludes Plaintiff From Raising His Claim for Reimbursement of SSDI Offsets For the First Time On Appeal.

Plaintiff argues that his challenge to Lincoln's calculation of SSDI offsets is ripe for review because "ERISA does not require either issue or theory exhaustion; it requires *only* claim exhaustion." *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d Cir. 1984) (emphasis added by Plaintiff).

Plaintiff, however, in challenging Lincoln's calculation of SSDI offsets, does not raise a new issue or theory of recovery in relation to Lincoln's decision to terminate his long term disability benefits. Rather, Plaintiff's SSDI offset challenge is a separate claim that he failed to raise during the administrative review process. Tellingly, Plaintiff requests reimbursement for certain alleged SSDI overpayments in a separate "Claim" identified as Count II of the Complaint. (ECF 1). Because Plaintiff failed to raise this claim during the administrative review process, Plaintiff is precluded from raising it now.

## III.    CONCLUSION

For the reasons set forth above, this Court should grant Defendant's Motion for Summary

Judgment, by dismissing the Complaint with prejudice.


Date:  August 3, 2021                                   Respectfully submitted,

                                                                        */s/ David J. Laurent*
                                                                        David J. Laurent (PA 33150)
                                                                        david.laurent@bipc.com
                                                                        William P. Lewis (PA 316527)
                                                                        william.lewis@bipc.com

                                                                        BUCHANAN INGERSOLL & ROONEY PC
                                                                        Union Trust Building
                                                                        501 Grant Street, Suite 200
                                                                        Pittsburgh, PA  15219-4413
                                                                        Telephone:  412-562-8800
                                                                        Fax:  412-562-1041

                                                                        *Attorneys for Defendant*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2021, I filed and served a true and correct copy of the foregoing Reply Brief In Support of Defendant's Motion for Summary Judgment, via ECF Filing upon the following:

Tybe A Brett, Esq.
Feinstein Doyle Payne & Kravec, LLC
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA 15219
(*Attorney for Plaintiff*)

Benjamin W. Glass, III, Esq.
Benjamin W. Glass, III & Assoc., P.C.
3998 Fair Ridge Drive, #250
Fairfax, VA 22033
(*Attorney for Plaintiff*)

*/s/ David J. Laurent*
David J. Laurent
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219-4413

4838-8565-9380, v. 7

17