IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MULLINS, | ) |
| | ) |
| Plaintiff | ) |
| | ) 2:20-cv-1883-NR |
| v. | ) |
| | ) |
| THE CONSOL ENERGY, INC. LONG TERM DISABILITY PLAN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

In this ERISA benefits dispute, now before the Court are two competing summary-judgment motions.[1] Mr. Mullins argues that he is entitled to reinstatement of his long-term disability benefits as a matter of law. Consol instead argues that its administrative ruling terminating the benefits should be upheld. After carefully reviewing the parties' arguments, the administrative record, and the relevant caselaw, the Court agrees with Consol.

## STANDARD OF REVIEW

Where an ERISA plan gives its administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan, [the Court] review[s] the administrator's decision under an 'abuse of discretion' standard or an 'arbitrary and capricious' standard, which, in this context, are effectively the same." *Bergamatto v. Bd. of Trs. of the NYSA-ILA Pension Fund*, 933 F.3d 257, 263-64 (3d Cir. 2019) (cleaned up). Consol's plan gives its administrator such authority. AR61. This, in turn, is delegated to Lincoln as Claims Administrator. AR20; AR22. Accordingly, the parties have already stipulated to this standard of review. ECF 13.

---

[1] The Court writes primarily for the parties, so the relevant factual background is incorporated into the analysis.

1

Under this standard, a Court's review is narrow; it is "not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009) (citation omitted). Instead, a plan administrator's decision is only arbitrary and capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

## DISCUSSION & ANALYSIS

The central question in this case is whether Mr. Mullins can perform "any suitable employment." Lincoln concluded that he could – specifically, certain sedentary work – and therefore denied Mr. Mullins long-term disability benefits under the plan. To be able to perform "any suitable employment" Mr. Mullins must have (1) the physical capability, and (2) the relevant vocational education, training, and experience. The Court addresses each requirement in turn.

### I. Substantial medical evidence supports Lincoln's findings regarding Mr. Mullins's disability.

In determining that Mr. Mullins is capable of sedentary work, Lincoln reviewed an extensive medical record and reached reasonable conclusions from it. While Mr. Mullins argues that Lincoln should have deferred to his treating physicians' opinions or conducted an independent medical examination, Lincoln's assessment of his condition was not arbitrary and capricious.

In its letter terminating benefits, Lincoln identified 35 separate medical records and test results that were before the administrator. AR573-74. It hired a rehabilitation and pain specialist, Dr. Neil Patel, to review Mr. Mullins's file. *See* AR807-19. Dr. Patel's report describes each record he examined, indicating that his analysis was based on a comprehensive review. *Id.* His analysis, adopted by Lincoln,

accounted for "degenerative changes" in Mr. Mullins's body, leading to permanent physical impairment. AR815-16. Nevertheless, he opined that Mr. Mullins would be able to work – with the proper restrictions. *Id.*

Similarly, when upholding its initial decision to terminate benefits, Lincoln comprehensively reviewed 37 medical records and hired an additional rehabilitation and pain specialist, Dr. Kevin Kohan, to review the file. AR631-38. Dr. Kohan also explained the contents of each record item he analyzed – including test results and notes from physical examinations – demonstrating a thorough understanding of Mr. Mullins's file. AR838-53. Dr. Kohan opined that while some findings pointed toward functional impairment, others did not. AR847. He agreed that Mr. Mullins should be able to work, provided he followed physical restrictions. AR847-48. In sum, these two thorough peer reviews provide substantial evidence supporting Lincoln's decision that Mr. Mullins was capable of performing sedentary work.

Nevertheless, Mr. Mullins takes issue with Lincoln's decisionmaking; he contends that, taken together, various factors – including discrepancy with treating physicians' opinions, failure to conduct an independent exam, and termination of benefits despite little change to the record – point toward a finding of arbitrariness and capriciousness. ECF 21, pp. 15-18. The Court disagrees.

To begin with, the Supreme Court has squarely held that "[n]othing in [ERISA] suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Nord*, 538 U.S. at 831. Importantly, Lincoln's experts' findings are not fundamentally at odds with Mr. Mullins's treating physicians' assessments. The doctors agreed that Mr. Mullins has important physical limitations, even if they differed regarding details such as how

3

much weight he could lift.² *Compare* AR508, AR2795, AR816, and AR847. But because Consol's plan requires long-term claimants be unable to perform *any* suitable employment, the key question is whether Mr. Mullins's conditions prevent him from performing even sedentary work. And Mr. Mullins's doctors did not expressly opine on that issue, including as part of an appeal record. *Compare Hession v. Prudential Ins. Co. of Am.*, 307 F. App'x 650, 654 (3d Cir. 2008) ("In our case, [claimant's] treating physicians opined strongly and repeatedly that she was unable to work full-time. Indeed, not a single treating physician or therapist ever suggested that [she] could return to work on a full-time basis."). So Lincoln did not "arbitrarily refuse to credit…the opinions of a treating physician" in this regard. *Nord*, 538 U.S. at 834.

Next, while Lincoln may have been on even firmer footing if it had chosen to do an independent examination, failure to do so does not in itself render a decision arbitrary and capricious. *See Reed v. CITIGROUP INC*, 658 F. App'x 112, 115 (3d Cir. 2016) (citation omitted) (explaining that failure to do an independent medical exam is "a factor" to be considered); *Potts v. Hartford Life & Accident Ins. Co.*, 272 F. Supp. 3d 690, 710 (W.D. Pa. 2017) (Gibson, J.) ("[N]umerous courts in the Third Circuit have held that there is no legal requirement for a plan administrator to demand an independent medical examination as part of its review of a claim for disability benefits under an ERISA-governed plan, even if the plan permits it to do so." (cleaned up)). That's especially true here, where Mr. Mullins's record involves ample "objective" evidence, such as descriptions of physical findings, lab tests, and imaging. AR573-74. Well-versed practitioners routinely view this type of evidence when treating patients for physical ailments. *Compare Haisley v. Sedgwick Claims Mgmt. Servs., Inc.*, 776 F. Supp 2d 33, 49-50 (W.D. Pa. 2011) (Conti, J.) ("Unlike types

---

² The Court notes that not all of Mr. Mullins's doctors were of one voice. While Dr. McGarry initially imposed a 5-lb. restriction, *e.g.*, AR508, Mr. Mullins's ankle surgeon instead listed a 10-lb. limit, AR2795.

of physicians who can formulate medical opinions based upon objective findings derived from objective clinical tests, a psychiatrist typically treats an individual's subjective symptoms. In contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective medical tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." (cleaned up)). Again, this Court "is not free to substitute its own judgment" and determine if Lincoln's course of action was correct medically. *Orvosh v. Program of Grp. Ins.*, 222 F.3d 123, 129 (3d Cir. 2000); *Pini v. First Unum Life Ins. Co.*, 981 F. Supp. 2d 386, 411 (W.D. Pa. 2013) (McVerry, J.) ("The relevant inquiry turns on the *reasonableness* (rather than on the *correctness*) of [the] decision." (emphasis in original)). The Court finds that employing an extensive peer review was not unreasonable here.

Finally, contrary to Mr. Mullins's argument, there was some new medical information that supported Lincoln's denial of benefits in 2020. To be sure, there was certainly some back and forth regarding Lincoln's decisions; in March 2019, Lincoln reinstated the benefits it had terminated in November 2018. AR536-37. But that was based on a "mental nervous limitation" and cabined by the plan's 12-month limitation on disability benefits for mental conditions. *Id.*; AR18. When Lincoln terminated benefits again in 2020, Mr. Mullins had already maximized those benefits. *Id.* Further, Lincoln may have concluded that Mr. Mullins's physical condition – specifically his ankle – improved. During Mr. Mullins's most recent appeal, Lincoln considered seven records from Dr. Timothy McGarry – Mr. Mullins's orthopedist. In an April 2020 visit, Dr. McGarry did not list a 5-lb. lifting restriction, unlike previously. *Compare* AR498-99 *with* AR508; AR511; AR514. When Lincoln reviewed this new information, it could reasonably determine some improved function after Mr. Mullins recovered from ankle surgery. *See* AR631-38.

At bottom, Lincoln did take Mr. Mullins's degenerative condition and its accompanying physical limitations into account. But it reached a different conclusion regarding its effect on his ability to work a sedentary job. Based on the thoroughness of that review and the explanation provided, it is apparent that some reasonable minds might accept this conclusion. *Fleisher*, 679 F.3d at 121. Therefore, the Court finds that Lincoln's decision was backed by substantial evidence and was therefore not arbitrary and capricious.[3]

## II. Substantial evidence supports Lincoln's vocational determination that suitable employment existed for Mr. Mullins.

When Lincoln determined that Mr. Mullins could do sedentary work, it identified specific positions it believed he could perform, based on his education and experience. AR575; AR637. Its most recent vocational report misidentified Mr. Mullins's previous job title when formulating its recommendations, and Mr. Mullins now raises this mistake as a basis for reversal. AR859. The error, though, was immaterial; Lincoln still based its decision on substantial evidence about Mr. Mullins's actual capabilities and job training and experience.

Importantly, Consol's plan states that the plan administrator has sole discretion to determine "suitable employment," and that such employment could be inside or outside the company. AR18. Even so, Lincoln did not baldly assert that "Mr. Mullins could perform some sedentary work somewhere" and end the matter. Instead, it hired a vocational specialist to examine his skills and qualifications. AR575; *see Gardner v. Unum Life Ins. Co. of Am.*, 354 F. App'x 642, 649 (3d Cir. 2009)

---

[3] Mr. Mullins asserts that Lincoln did not "fully consider" his Social Security Disability award in its decision. ECF 21, p. 25. This argument misses the mark, because Lincoln's denial letter clearly explained that it relied on information including "additional reviews conducted after the approval of Mr. Mullins' SSD award[.]" AR638. In a similar case involving the same ERISA plan, the Third Circuit found this explanation sufficient. *Addington v. Senior Vice President Hum. Res. Consol Energy, Inc.*, 841 F. App'x 443, 448 (3d Cir. 2020).

(explaining that the insurer "was under a duty to make a reasonable inquiry into the types of skills [a claimant] possesses, and whether they transfer to another job in which she can be gainfully employed as defined by the policy").

Consol concedes that the 2019 vocational report used an incorrect job title for Mr. Mullins; it referred to him as a Mine Superintendent rather than a Section Supervisor or Foreman. ECF 29, p. 32. Based on the job description of this erroneous position, Mr. Mullins contends that the report recommended jobs that would be very difficult for him to obtain or perform – a Production Planner, Terminal Operations Supervisor, and Branch Manager. ECF 21, p. 13. On the other hand, an earlier 2016 vocational analysis used his correct former job title and description, and thus generated other suggested positions – a Transportation-Maintenance Supervisor, Dispatcher, and Production Control Supervisor. AR862-64. The 2016 report also described a phone call the vocational analyst had with Mr. Mullins, in which he described his exact job duties, certifications, and work history. AR863. This information formed the basis for the report's list of Mr. Mullins's skills. *Id.*

The parties dispute whether Lincoln may rely on the older report in defense of its 2020 final decision to terminate benefits. ECF 30, p. 1; ECF 31, p. 5. The Court finds that reliance on the earlier report is proper because, importantly, the 2019 report specifically indicated that the vocational analyst reviewed the 2016 report. AR858 ("The following documentation was reviewed: [Transferable Skills Analysis]…dated 11/15/2016[.]"). This is significant for two reasons.

First, both reports describe Mr. Mullins experience and skill in largely the same way. That is, both reports express that Mr. Mullins had experience in "obtaining and seeing to the appropriate use of equipment, facilities, and materials to do certain work" and "assessing performance of…other individuals." AR858; AR863. Both list a general management skill. AR858 ("Planning and directing work of others"); AR863 ("managing…the time of others"). Both list a general

communication skill. AR858 ("communicating with others in a professional and tactful manner"); AR864 ("talking to others to convey information effectively"). And both list basic computer skills. AR858; AR864. This suggests that it was not unreasonable for the vocational analysis to identify the managerial positions it did in the 2019 report, regardless of the mistake over Mr. Mullins's specific job title.

Second, even if Mr. Mullins was right that Lincoln considered the wrong job title in 2019 and identified positions for which he wasn't suitable, there is no dispute that the 2016 report identified suitable positions, which would have been appropriate for Mr. Mullins even in 2019.

In short, between the 2016 and 2019 reports and Lincoln's understanding of Mr. Mullins's skills and experience, Lincoln had substantial evidence to support its conclusion that Mr. Mullins had the training and skills for suitable sedentary employment.[4]

## **CONCLUSION**

For the foregoing reasons, the Court concludes that Lincoln's decision to terminate benefits was not arbitrary and capricious. Plaintiff's motion for summary judgement is hereby **DENIED**, and Defendant's motion for summary judgment is hereby **GRANTED**.[5] An appropriate judgment follows.

DATE: September 16, 2022                                        BY THE COURT:

                                                                /s/ *J. Nicholas Ranjan*
                                                                United States District Judge

---

[4] Mr. Mullins also objects that the alternate positions Lincoln listed would not be accessible to him in southwestern Virginia. ECF 21, p. 19. But there is no requirement under the plan suggesting that geographic accessibility or typical regional salary are determinative factors.

[5] Because the Court is not ordering reinstatement of benefits, it need not reach the Social Security offset claim.